# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID MAURICE MCKNIGHT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MAJOR WAYNE JAMES, ) <br> LUCIE TAYLOR, DR. EZEIGBO, ) <br> and GABRIEL KYEREMATEN, ) <br> ) <br> Defendants. ) | **MEMORANDUM OPINION** <br> **AND RECOMMENDATION** <br> <br> 1:08CV406 |

This matter is before the court on motions to dismiss by all four Defendants (docket nos. 13, 19, 24.) Furthermore, Plaintiff has filed a motion to amend the Complaint (docket no. 32). The parties have either responded to the respective motions or the time to do so has passed. In this posture, the matter is ripe for disposition. Furthermore, because the parties have not consented to the jurisdiction of the magistrate judge, the motions must be dealt with by way of recommendation. For the following reasons, it will be recommended that the court deny Plaintiff's motion to amend and grant Defendants' motions to dismiss.

## I. Background and Plaintiff's Allegations

Plaintiff is an inmate in the custody of the North Carolina Department of Correction. Plaintiff filed his *pro se* 42 U.S.C. § 1983 complaint against Defendants on June 3, 2008, in the Eastern District of North Carolina. The case was transferred to this district on June 17, 2008. Plaintiff's section 1983 action is based on Defendants' alleged deliberate indifference to Plaintiff's serious medical needs while

he was incarcerated at the Forsyth County Detention Center in Winston-Salem and at Central Prison in Raleigh.

The allegations in the Complaint are vague and do not even specify any particular names. The allegations relate to Plaintiff's apparent dissatisfaction with how he was treated for lung cancer while incarcerated at the Forsyth County Detention Center and at Central Prison. Plaintiff has sued four Defendants. Defendant Lucie Taylor is a Health Services Administrator for NaphCare, assigned to the Forsyth County Detention Center. Defendant Dr. Ezeigbo (referred to in the Complaint as Dr. Zeebo) is a Medical Director for NaphCare, assigned to the Forsyth County Detention Center. Defendant Major Wayne James is Director of the Forsyth County Detention Center. Defendant Dr. Kyerematen (referred to in the Complaint as Dr. Cherrymartin) is a physician employed by the North Carolina Department of Correction and provides care at Central Prison.

In the Complaint, Plaintiff does not provide any specific names for any persons involved in his treatment for cancer. Plaintiff alleges that while he was being held at the center, "the doctors found out that [Plaintiff] had lung cancer." (Compl., p. 3.) At that time, Plaintiff "was put on pain medication." "On Feb. 5, '07 the plaintiff believes he "was over medicated at that time." (*Id.*) Plaintiff was sent to Central Prison to undergo treatment for lung cancer. (*Id.*) Plaintiff alleges that "[w]hile he was going through [his] treatment, the Doctor had [him] on methadone to help with the pain." (*Id.*) The treatment was finished on June 19, 2007. (*Id.*) After the

2

treatment, the "doctor at Central Prison stopped the methadone," and Plaintiff "went through withdrawal" and his "body hurt so bad that [he] wanted to die." After two days, the doctor put the plaintiff back on methadone "because the pain was too much for [Plaintiff] to bear." (*Id.* pp. 3-4.)

Plaintiff alleges that in August, "they came to get [Plaintiff] from the jail." (*Id.*, p. 4.) "After that, [Plaintiff] started going to the doctor for [his back]." (Id.) The doctor "put [Plaintiff] on another medication alone [sic] with methadone to help with [the plaintiff's] pain with [his] back." (*Id.*) When Plaintiff "went back to [his] lung cancer doctor, [Plaintiff] told him [Plaintiff] wanted to come off the methadone medication." (*Id.*) "So [the doctor] took [Plaintiff] off." (*Id.*) After that, Plaintiff alleges he "started seeing and hearing things along with going crazy for some reason." (*Id.*) He feels "as if it was the medication that the jail was giving [him]," and he told them so. (*Id.*) Plaintiff alleges that he "started thinking and seeing things" and he "got into it" with "a guy." (*Id.*) Consequently, he was charged with additional criminal charges and was thrown "in the hole." (*Id.*)

Plaintiff alleges that he tried to commit suicide in January 2008 and then later "2 or 3 more times." (*Id.*) He alleges that he "tried to stop taking the medication," but that "they would put it in [his] food." (*Id.*) When he "knew they were putting the medication in [his] food, [he] stopped eating." (*Id.*, p. 5.) "So they sent [him] back to Central Prison where [he] could eat enough when [he] got there." (*Id.*) He alleges that a few weeks before he filed the Complaint his "doctor told [him] that [his] cancer

3

is worse, and ask [sic] [him] why the jail let it go so long before [he] was seen." (*Id.*) He alleges that the doctor told him that he was "to be checked out every 3 months for the rest of [his] life." (*Id.*)

For relief, Plaintiff seeks the dismissal of all criminal charges against him resulting from the assault he committed while in jail; $1 million; and "any more treatment needed for [his] cancer and nerves." (Compl., p. 4.)

Plaintiff's Motion to Amend the Complaint

I first note that Plaintiff has filed a motion to amend the Complaint. Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be given freely when justice so requires, leave to amend is not automatic and is within the sound discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In *Foman*, the Supreme Court set forth numerous factors to be considered when ruling on a motion to amend, including whether allowing the amendment would be futile. *Id.* Here, the proposed Amended Complaint is attached to and is part of Plaintiff's motion to amend. (*See* docket no. 32.) The proposed Amended Complaint, however, does not contain the factual allegations regarding the treatment of Plaintiff's cancer. Rather, the proposed Amended Complaint adds wholly new factual allegations related to how Plaintiff was treated by various non-parties to this lawsuit after filing the original Complaint. For instance, the proposed Amended Complaint discusses the fact that Plaintiff underwent surgery to have one of his lungs removed. Plaintiff complains about the prison losing a pair of shoes that

4

belonged to him and failing to return them to him after the surgery. He alleges that officials at the prison eventually returned his shoes but that they somehow tried to trick him into signing a grievance form in order to get the shoes back. He also complains about a statement, allegedly made by a non-party to the lawsuit, to the medical doctors who operated on Plaintiff to remove one of his lungs; he further takes issue with the fact that he has been moved away from Central Prison and to Craven Correctional Institution, which is too far for his mother to drive to visit him; and he complains about being put back "in the hole" while at Central Prison.

As with the original Complaint, the proposed Amended Complaint is vague and borders on the unintelligible. Significantly, it contains no allegations of conduct by any of the named Defendants. Therefore, to allow Plaintiff to amend the Complaint would be futile. Furthermore, because the proposed Amended Complaint does not contain the allegations made in the original Complaint, it would actually not be in Plaintiff's best interest to allow the proposed Amended Complaint to supercede the original Complaint. For all these reasons, it is recommended that the court deny Plaintiff's motion to amend the Complaint.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C.

1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). This duty of fair notice under Rule 8(a) requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). As the Supreme Court has recently instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted).

**III. Analysis**

**Plaintiff's Section 1983 Claim Alleging Deliberate Indifference to a Serious Medical Need**

Not "every claim by a prisoner that he has not received adequate medical treatment states a [constitutional] violation." *Estelle v. Gamble*, 429 U.S. 97, 105

(1976). The Eighth Amendment only proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence *deliberate indifference* to serious medical needs." *Id*. at 106 (emphasis added). Following *Estelle*, courts have developed a two-part test for evaluating section 1983 claims alleging Eighth Amendment violations as to medical care: Courts first evaluate whether there was evidence of a serious medical need; if so, courts then consider whether a defendant's response to that need amounted to deliberate indifference. *Mandel v. Doe*, 888 F.2d 783, 787-88 (11th Cir. 1989).

The deliberate indifference standard requires the plaintiff to prove that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is not an objective standard, along the lines of "civil-law recklessness," but rather a subjective standard, akin to criminal law recklessness, focusing on the defendant's conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 836-37. In other words, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Although "deliberate indifference" is a subjective standard, a prison official's knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842. For example, a fact finder may infer "that a prison official knew of a substantial risk *from the very fact that the risk was obvious.*" *Id.* (emphasis added).

7

Mere negligence or medical malpractice is not sufficient to establish deliberate indifference. *See West v. Atkins*, 487 U.S. 42, 48 n.8 (1988); *Estelle*, 429 U.S. at 105-06. An "error of judgment" on the part of prison medical staff, or "'inadvertent failure to provide adequate medical care,' while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979) (quoting *Estelle*, 429 U.S. at 105). As such, mere disagreements between a health care provider and an inmate over the proper course of treatment do not state a viable Eighth Amendment claim. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review."). Rather, to establish deliberate indifference, the plaintiff must show that treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement [or] supplying medical needs." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

<u>Defendants Dr. Kyerematen, Taylor, and Dr. Ezeigbo</u>

I first find that Plaintiff fails to state a claim for deliberate indifference to serious medical needs as to Defendant Dr. Kyerematen. The Complaint does not

8

contain any allegations that Dr. Kyerematen either denied care to Plaintiff or that his care was grossly inadequate. Indeed, the Complaint does not refer specifically to Dr. Kyerematen by name at all. I further find that Plaintiff fails to state a claim against Defendants Taylor and Dr. Ezeigbo. As with Dr. Kyerematen, Plaintiff has made no specific allegations against Taylor or Dr. Ezeigbo in the Complaint; rather, all of his allegations refer to "doctors" generally, and he refers to all other persons as "they." Plaintiff has failed to allege any facts showing that either Taylor or Dr. Ezeigbo disregarded or neglected any serious medical need of Plaintiff. For instance, Plaintiff does not allege that either Taylor or Dr. Ezeigbo knew that Plaintiff needed treatment in order to avoid a substantial harm, but consciously decided not to treat Plaintiff. Therefore, the allegations in the Complaint simply fail to state a claim against Defendants Kyerematen, Taylor, and Ezeigbo for deliberate indifference to a serious medical need.

In a belated response to the motion to dismiss, Plaintiff asserts the following factual allegations as to Dr. Kyerematen: According to Plaintiff, after doctors at Baptist Hospital diagnosed him with lung cancer, they told him that he needed to start treatment. Plaintiff alleges that he was sent to Central Prison on February 6, 2007, to begin treatment under Dr. Kyerematen. Plaintiff alleges that Dr. Kyerematen began Plaintiff's treatment on March 6, 2007, when Plaintiff was sent to UNC Hospitals. Plaintiff alleges that as soon as he got to Central Prison, Dr. Kyerematen took Plaintiff off all of the pain medications that the doctors at Baptist

9

Hospital had put him on. Plaintiff alleges that Dr. Kyerematen put Plaintiff on thirty milligrams of MS Contin four times a day and that doctors also placed an implanted power port in Plaintiff's chest for his treatment. Plaintiff alleges that sometime during his stay at Central Prison, the MS Contin stopped helping Plaintiff with his pain. Plaintiff alleges that Dr. Kyerematen took him off of the MS Contin and put him back on thirty grams of methadone four times a day. Plaintiff was on the medication for many months. He alleges that June 19, 2007, was his last treatment for the cancer. He alleges that on July 3, 2007, he was taken back to UNC Hospitals for an MRI. He alleges that at that time, a doctor told him that he would have to have an MRI every three months for the rest of his life. Plaintiff alleges that the last time he was seen at the hospital Doctor Kyerematen stopped Plaintiff's methadone for two days. Plaintiff alleges that he went through horrible withdrawals, and Dr. Kyerematen put him back on the methadone. Plaintiff alleges that Dr. Kyerematen took him off the methadone for two days to "get back at" Plaintiff because they did not get along.

As for Defendants Taylor and Dr. Ezeigbo, Plaintiff states in his belated response to the motion to dismiss that after he complained about pain, Dr. Ezeigbo ordered a chest x-ray and an MRI, that Plaintiff was provided medications as ordered, and that he was referred to a "back doctor" when he complained of back pain. Plaintiff also complains that he wanted to have his medications crushed in front of him, but he does not allege that any harm resulted from the alleged denial of this request. Plaintiff also contends that he had a painful knot in his neck and that

10

he was referred to a hospital for treatment, but he contends that treatment did not come quickly enough.

Even assuming the truth of the factual allegations regarding Defendants Kyerematen, Taylor, and Ezeigbo in Plaintiff's belated response to the motion to dismiss, Plaintiff still fails to state a claim for deliberate indifference to a serious medical need as to these three Defendants. Plaintiff's own allegations establish that he was diagnosed with lung cancer; a cancer doctor treated him; he was transferred to Central Prison for a full course of cancer treatment; his pain was treated; his alleged withdrawal symptoms were promptly addressed; another doctor treated him for back pain; he was given medications as prescribed; and he later followed up with his cancer doctor. None of these allegations amount to deliberate indifference. The only allegations that appear to be directed to Dr. Kyerematen are that he took Plaintiff off methadone for two days and that Plaintiff suffered terrible withdrawal symptoms. This circuit has held that requiring inmates to stop methadone "cold turkey," causing them to suffer withdrawal, is not an unconstitutional violation of civil rights. *Fredericks v. Huggins*, 711 F.2d 31, 34 (4th Cir. 1983). In any event, by Plaintiff's own allegations, Dr. Kyerematen promptly addressed his withdrawal symptoms by placing him back on methadone after only two days. Furthermore, as to Plaintiff's claim that because he discovered medication in his food and stopped eating, he fails to allege which named Defendants, if any, placed the alleged medication in his food, or even how this allegation supports his claim for deliberate

indifference.  Furthermore, the Complaint contains no allegation that Taylor or Dr. Ezeigbo had anything to do with the alleged medication in his food, nor does Plaintiff allege that either of these Defendants deprived Plaintiff of any treatment for his cancer.

Although Plaintiff alleges that an unnamed doctor asked him why the jail let Plaintiff's cancer "go so long" before he was seen again, Plaintiff does not allege that Taylor or Dr. Ezeigbo participated at all with regard to Plaintiff's medical appointments, or that they otherwise denied him any treatment.  In any event, even if Plaintiff had alleged that Defendants Taylor and Ezeigbo somehow failed to maintain a particular schedule of visits, the failure to render treatment consistent with a doctor's orders is not sufficient to state a claim for deliberate indifference.  *Ross v. Kelly*, 784 F. Supp. 35, 46 (W.D.N.Y. 1992).  In addition, even if Plaintiff were attempting to allege negligence in the follow-up treatment for his cancer, medical malpractice does not rise to the level of a constitutional violation for deliberate indifference to serious medical needs. *Estelle*, 429 U.S. at 105.  In sum, for all these reasons, Plaintiff simply fails to allege any facts to state a claim against Defendants Kyerematen, Taylor, or Ezeigbo for deliberate indifference to a serious medical need.

Defendant Wayne James

In support of the motion to dismiss, Defendant James contends that dismissal is appropriate as to him in his individual capacity because Plaintiff fails to allege in

12

the Complaint any involvement by James in the alleged constitutional violations; dismissal is appropriate as to Defendant James in his official capacity because Plaintiff fails to allege that the alleged constitutional violations were the result of a policy or custom of the Forsyth County Sheriff's office; and, in any event, Plaintiff wholly fails to allege that any of the named Defendants were deliberately indifferent to Plaintiff's serious medical needs. I agree with Defendant James as to each of these arguments.

First, the Complaint contains no allegations whatsoever against Defendant James; thus, it alleges no personal involvement by Defendant James as to Plaintiff's claims of deliberate indifference to serious medical needs. Defendant James' position as Director of the Forsyth County Correctional Center cannot, by itself, subject him to claims of deliberate indifference to a prisoner's medical needs. *See Farmer*, 511 U.S. at 836-37 (stating that the deliberate indifference standard requires a plaintiff to prove that "the official knows of and consciously disregards an excessive risk to inmate health or safety").

Second, as Defendant James notes, Plaintiff's claims against James in his official capacity are, in reality, claims against the Forsyth County Sheriff's Office. The Sheriff's Office, however, may not be held liable under section 1983 "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." *Collins v. City of Harker Heights*, 503 U.S. 115, 120-21 (1992). In other words, the doctrine of respondeat superior may not serve as the basis for imposing section

13

1983 liability on a governmental entity. *Collins*, 503 U.S. at 121. Rather, for Plaintiff to state a claim against the Sheriff's Office, he must allege either that his rights were impaired as a result of an official policy, practice, or custom promulgated by the governmental entity, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989), or that his rights were impaired by the act or acts of an individual who has final policymaking authority for the challenged act to establish municipal liability, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986). Here, the Complaint wholly fails to allege either. Therefore, even accepting Plaintiff's allegations as true, Plaintiff cannot state a claim for deliberate indifference to serious medical needs as to the Sheriff's Office.

Finally, and in any event, Plaintiff fails to state a claim for deliberate indifference to serious medical needs. In his belated response to the motion to dismiss, Plaintiff alleges the following as to Defendant James:

> I think it was the first of Feb of 2008 they put me back in some what of a reg dorm and on 2/8/08 is when me and another guy got into a fight after that Major Wayne James officers put me in the hole where I didn't get a shower for 12 days within the time I was in the hold I tried 2 or 3 more times to kill myself or hurt myself and every time I tried I was put in the black chair 3 times by Major James' officers once for 8 hours once for 12 hours and then once again for 16 hours now from Aug 2007 till the time the jail sent me back to Central Prison in 2008 Major James' officers beat me up 2 times plus I feel as if the nurses or the officers were the ones that was putting medication in my food.

(Pl.'s Resp. Br. 8-9.) I agree with Defendant James that nothing in the belated response brief corrects the fatal flaws in Plaintiff's Complaint. Therefore, Defendant James' motion to dismiss should be granted.

14

**CONCLUSION**

For the reasons stated herein, it is **RECOMMENDED** that the court **DENY** Plaintiff's motion to amend the Complaint (docket no. 32) as futile. It is further **RECOMMENDED** that the court **GRANT** the motions to dismiss (docket nos. 13, 19, 24) filed by Defendants Lucie Taylor, Dr. Ezeigbo, Wayne James, and Dr. Kyerematen and dismiss this action with prejudice.

_____
Wallace W. Dixon
United States Magistrate Judge

March 27, 2009